IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| KORONE ROBINSON, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) CIVIL CASE NO. 2:17-cv-99 |
| CITY OF DARIEN, DARIEN POLICE | ) |
| DEPARTMENT, DONNIE HOWARD, | ) |
| RYAN ALEXANDER AND | ) |
| JOSEPH CRESWELL, | ) |
| Defendants. | ) |
| | ) |
| | ) |

**PLAINTIFF'S SUPPLEMENTAL BRIEF AFTER ORAL ARGUMENTS**

Comes now Plaintiff, by and through his counsel of record, and files this his Supplemental Brief in support of arguments raised and or contested as a result of oral arguments held on October 10, 2018. Plaintiff incorporates all pleadings, briefs, and discovery filed by both parties, and shows the Court the following:

**Factual Discussion**

**I. The disputed facts as to when Robinson and Miller began dating are material and unable to be resolved absent the fact finder weighing credibility of the witness and evidence**

Establishing when Robinson and Miller initiated a relationship is material specifically as to the April 2015 directive for Robinson and Miller to refrain from traveling in a vehicle together absent approval. If the relationship began at any time subsequent to the April 2015 directive determining the exact date the relationship began becomes immaterial, rather at that point determining when the couple went *public* becomes the material issue. Robinson testified that even though they were not yet dating

1

when the directive was issued Alexander explained that it "didn't look good" for them to be in a vehicle together and while he did not personally care to give him a "heads up" when they were going to ride together. (Robinson Dep., 103: 1-18). Defendants however, argue the April 2015 directive was a direct result of Robinson and Miller being in a relationship. (Dkt. No. 26-1 pg. 9).

Not only does the record contain sufficient evidence from which a reasonable fact finder could find the pair did not begin dating until sometime after June 2015[1], Defendants are unable to agree on one timeline even amongst themselves. First Howard testified that the learned the couple was dating directly from Robinson and Miller, but was not able to state with certainty when this occurred. (Howard Dep., 309:5-12). Later Alexander testified unequivocally he knew the pair were dating after they attended a concert together, which occured in December 2015, then with equal conviction he swore the couple had to be dating when his grandfather passed away in March 2015, before finally producing a text message dated September 2015 which references an "anniversary" and now Defendants claim they started dating in September 2014. (Dkt. No., 35 at 5).

There are abundant contradictions and inconsistencies proffered by Alexander as to his knowledge of Robinson's relationships as well as his commands to Robinson which could allow a reasonable factfinder to discredit his testimony. At one point during his deposition he testified that he did not make any official change in policy regarding vehicles until January 2016 at which time he ordered Robinson and Miller to refrain from

---

[1] As cited in his Response to Defendants' Motion for Summary Judgment, there is evidence in the record, in addition to his own testimony, as to when his prior relationship ended and he moved as well as his advocating for another officer to be hired to replace Miller in June 2015.

2

traveling together for any purpose[2]. (Id. 147: 20 -148:12).  Alexander further stated no less than six times during his deposition he was not good with dates or time while discussing the timing of Robinson and Miller's relationship. (Alexander Dep., 153; 154; 156; 157; 285).  He candidly admitted "As far as dates, I've told you all day I have not a clue.  When it comes to time, I couldn't help you.  I'm lost." (Id. at 286:17-19).  Most importantly, Alexander's credibility is severely impaired if not nullified by his own testimony that he would in fact lie to Robinson, Miller, and even then Captain Davis. (Id. at 106:1 - 107:21).

A reasonable factfinder could determine that Robinson and Miller did not begin dating until sometime after June 2015 which refutes the proffered reason for issuing the April 2015 directive.  Furthermore, in light of the uncontested testimony that the couple took their relationship "public" after attending a concert with Alexander and his wife in December 2015, a reasonable factfinder could determine it was being subjected to the newly visible interracial relationship which motivated the chain of adverse employment actions beginning in January 2016[3].

## II. Contradictions between deposition testimony and affidavits filed on behalf of defendants Motion in Support of Summary Judgment are material

The conflict between affidavits filed in support of Defendants' Motion for Summary Judgment and deposition testimony directly impact three crucial issues in this case; when or if Alexander disclosed Robinson's alleged insubordination before he resigned, the motivation for transferring Robinson to patrol and finally what information

---

[2] This supports Robinson's testimony, that the April 2015 directive was not actually from Alexander who did not care if the investigators traveled together.

[3] The record contains evidence that this was the first interracial relationship which Robinson engaged in publically and Defendants unable to refute this fact focus exclusively on their prior knowledge Robinson had dated white women in the past. (Howard Dep. 335:14-16).

3

was known or physically available to Howard on June 27, 2016 at the time he decided to terminate Robinson.

Alexander first testified during his deposition that while he had knowledge of other instances of Robinson and Miller riding in a vehicle together he had had not presented the information because he had resigned from DPD. (Alexander Dep., 165:18 - 167:8). In contrast, Alexander states in his affidavit that he disclosed additional instances of insubordination allegedly occurring after January 2016, to Howard while Robinson was on forced leave and before he resigned. (Alexander Aff., ¶¶5,6). In addition to the inherent contradiction between his deposition testimony and affidavit there is also evidence in the record that Alexander attempted to suspend Robinson two additional times after January 2016 and in both instances he acted without information, investigation, or documentation as to the alleged infractions. (Dkt. No. 34 at 9,12). Alexander's additional attempts to suspend/punish Robinson in the absence of information or documentation begs the question, why would he forgo suspending/punishing Robinson if he in fact had evidence of insubordination in favor of his unsupported attempts prior to resigning?

Howard testified during his deposition that he disbanded narcotics because after Alexander resigned there was no one to investigate narcotics. (Howard Dep., 235:6-15). However, he also testified that he expressly informed Robinson he could run the narcotics division while working in patrol and was able to continue working narcotics investigations as he came across them. (Id. at 239:2-10). Moreover, despite extensive questioning as to when and why he transferred Robinson to patrol Howard did not so much as imply, let alone state, he had transferred Robinson to separate him and Miller or

4

that he had been informed of any issue with insubordination. However through his affidavits Howard expounds upon his reasoning for transferring Robinson and further claims after he disbanded the narcotics division "no one performed any narcotics investigations for eighteen months" when he then elected to reopen the division and promote Sgt. Creswell to narcotics investigator. (Dkt. No. 35, Ex. 1, Howard's Second Aff.).

In regards to when he decided to terminate Robinson, Howard testified during his deposition that Brown was present at lunch when the group was approached by the fire chief about the comment on the radio. (Howard Dep., 275:11). He agreed with officer Turner's testimony that they did not know the identity of the officer who made the comment and it took time to determine the identity of the officer. (Id. at 276:2-18).

In light of the irreconcilable material conflict between the deposition testimony of Alexander, Howard, and Brown and their respective subsequent affidavits, a reasonable factfinder could find that Alexander did not disclose any additional instances of alleged insubordination and/or that insubordination motivated Robinson's demotion[4] or finally, as Robinson has previously argued, calls into question what information was actually available and to whom on June 27, 2016 when the termination decision was made. (Dkt. No., 34 pg. 19; Dkt. No. 36 pg. 5). As Brown's subjective testimony is the only source of information physically available to Howard at the time he decided to terminate Robinson discrepancy between Howard and Browns Depositions and subsequent affidavits directly relates to the veracity of Defendants proffered explanation for their actions.

## Argument and Citation of Authority

---

[4] It becomes increasingly likely that a reasonable fact finder would discount the conflicting Alexander and Howard's testimony in favor of testimony from disinterested witnesses such as Archie Davis, whose recollec even Howard admitted he would not question. (Howard Dep.,

5

I.  **Plaintiff is able to establish a prima facie case under the McDonnell Douglas framework or other permissible permutation of intentional discrimination for every subject adverse action.**

As the Defendants conceded at oral arguments we must address each distinct claimed category of adverse action- discipline, demotion, termination, and reporting to POST.

a. **Comparator Evidence**

Both sides have argued extensively as to the existence or absence of comparator evidence and Robinson will not replicate those arguments now.  However, as raised at oral arguments Miller is similarly situated employees outside Robinson's class who was given far better treatment despite engaging in identical conduct.  It is illogical to claim, nor has plaintiff's counsel been able to locate any precedent holding, that a comparator is disqualified if he or she is involved as a co-actor in the plaintiff-employee's alleged misconduct.  Such an argument turns the law on its head.

b. **Other Evidence of Discrimination**

As Defendants concede, evidence of a suitable comparator is only one means for satisfying the traditional formulation of the prima facie case, but in the absence of a comparator we must look to whether the plaintiff has "come forward with other evidence of discrimination." Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1276–77 (11th Cir. 2008).  It is not the volume, but rather the nature of the circumstantial evidence which determines if a reasonable factfinder could infer discriminatory intent.

Despite Defendants' argument to the contrary there are numerous examples of plaintiff-employee's claims surviving summary judgment (or should have survived

6

summary judgment) under the "*other evidence*" analysis applied in Wilson and Rioux. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079 (emphasis added); Rioux, 520 F.3d 1269. See Cooper-Houston v. Southern Railway Co., 37 F.3d 603, 605 (11th Cir. 1994); see also Torres-Skair v. Medco Health Solutions, Inc., 2014 WL 6805113 (11th Cir. 2011); see also Smith v. Lockhed-Martin Corp., 644 F.3d 1321 (11th Cir. 2011).

    In this case the record contains sufficient "other evidence" of discrimination. First, Howard permitted the Nazi Flag to be displayed in both the old and current DPD headquarters and his and Alexander's testimony regarding the same is contradicted by disinterested third party witnesses. Second, former officer Gault testified he heard Howard state he became physically ill when he learned his daughter was dating a black man during a conversation regarding interracial dating. Third, Gault further testified that the attitude at DPD towards Robinson changed after everyone found out he and Miller were in a relationship.  Fourth, Howard admitted he told a story about placing watermelon on the side of the street to wait for unsuspecting African Americans to come get it so he could shoot them with his BB gun. Fifth, Howard admitted that the conduct of the other officers he permitted to resign was in fact worse than Robinson's conduct. Sixth, Robinson and Miller's relationship was the first interracial relationship to occur at DPD.  Finally, Davis testified Howard ceased praising Robinson's work performance in January 2016, which is after Robinson and Miller took their relationship public.

    c. **Even if Defendants' met their burden of production the record contains sufficient evidence which would allow a reasonable factfinder to believe the proffered reason is mere pretext**

Even the presence of merely a few admissions, when accompanied with some evidence of discriminatory animus, while not "…amounting to direct evidence, but showing some [discriminatory] animus, may be significant evidence of pretext..." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (the employer's simple alleged statements that "women aren't typically in that type of position," was sufficient to allow a reasonable factfinder to infer discriminatory animus). Cooper-Houston v. Southern Railway Co., 37 F.3d 603, 605 (11th Cir. 1994).

In addition, sufficient evidence of inconsistencies, implausibility's, contradictions in the employer's proffered legitimate reasons for its actions may demonstrate pretext. Combs v. Plantation Patterns, 106 F.3d 1519 (11th Cir. 1997).  If the plaintiff-employee introduces  F.3d evidence sufficient to permit the factfinder to disbelieve the employer's proffered explanations summary judgment is not appropriate. Id. at 1580.  In *Combs* the employer provided three non-discriminatory legitimate reasons for not promoting the plaintiff-employee.Id.  However, there was contradictory evidence as well as conflict within the employer's own testimony such that a reasonable factfinder could infer the proffered reasons were merely pretextual. Id.

Robinson has previously cited to the voluminous material factual discrepancies contained in the record and will not recite the same here in the interest of efficiency.

**II.** *Application of the Pickering balance test shows Defendant's' proffered interest for infringing upon Robinson's right of Intimate Association is insufficient to justify their actions.*

Dating is a recognized associational relationship protected under the First Amendment. Wilson v. Tayler, 733 F. 2d 1539 (11th Cir. 1984) reversed on other

grounds.  Under *Shahar v. Bowers*, the eleventh circuit court of appeals ruled the appropriate test applicable to claims of violation of the right to intimate association under the First Amendment in the public employment context is the Pickering balancing test. 114 F. 3d 1097 (11th Cir. 1997).  The court further explained that *Parks v. City of Warner Robins*, the case Defendants rely on in support of their motion is applicable to situations wherein a legislative act is at issue. Id.  fn. 14.  "*Pickering* balancing, in the public employment context, involves the weighing of the employee's interest in the exercise of a constitutional right against the employer's interest in maintaining an efficient workplace." Starling v. Bd. Of Cty. Comm'rs, 602 F.3d 1257, 1261 (11th Cir. 2010).

To establish a claim the employee must show that "...the associational activity was a substantial or motivating factor in the employer's [adverse] action, and, if so, whether a preponderance of evidence supports the conclusion that the adverse action would not have occurred in the absence of the associational activities."Boudreaux v. McArtor, 681 F. App'x 800, 803 (11th Cir. 2017);  Hatcher v. Bd. of Pub. Educ. & Orphanage for Bibb Cty., 809 F.2d 1546, 1559 (11th Cir. 1987)(court reversed summary judgment holding genuine issues of material fact as to employer's motivation for adverse action as well as whether employer's interest in efficient operation outweighed the employee's right of free association).  "[T]he factfinder should determine whether the balance between appellant's interest in engaging in the associational activity, and the state's interest as an employer in promoting efficient operation... supports the challenged action." Id. at 803.

In the instant case, Robinson is claiming disparate treatment through the targeted and arbitrary application of an *ad hoc* vehicle policy applicable *only* to Robinson and

Miller, unexplained shift transfers, an attempt to transfer Miller to patrol, and the attempt to suspend Robinson in March 2016 when he acted in his private capacity regarding Miller's cellular service. In addition, Sgt. Creswell and his girlfriend, Carley Howard, are another couple working for DPD and who are able to have regularly if not daily interaction and been permitted to ride in Creswell's issued vehicle.  If prioritizing each other's safety over that of the public or securing the scene was a legitimate concern of DPD it is refuted in light of the continued practice to permit officers to transport their civilian girlfriends in their issued vehicles while on duty.  One officer even had his civilian girlfriend in the vehicle during a high speed chase and was not punished and even permitted to have her ride along again after the incident.

The "employer-generated restriction on [Robinson and Miller's] relationship" is not connected to any proffered business concern; as such a reasonable factfinder could infer they are truly thinly-veiled attempt to damage Robinson's relationship with Miller *outside of work* by putting pressure on them *within* the workplace.

## Conclusion

The Plaintiff has established the presence of genuine issue of material fact and respectfully requests the Court to deny Defendants' Motion for Summary Judgment.

This 19th day of October, 2018.

/s/ Katie S. Mitchell
KATIE S. MITCHELL
Georgia Bar No. 106088
/s/ Scott G. Reddock
SCOTT G. REDDOCK
Attorneys for Plaintiff
111 West Court St.
Hinesville, GA 31313

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

| | |
|---|---|
| **KORONE ROBINSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| **vs.** | ) |
| | ) **CIVIL CASE NO. 2:17-cv-99** |
| **CITY OF DARIEN, DARIEN POLICE** | ) |
| **DEPARTMENT, DONNIE HOWARD,** | ) |
| **RYAN ALEXANDER AND** | ) |
| **JOSEPH CRESWELL,** | ) |
| **Defendants.** | ) |
| | ) |

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served all parties in this case in accordance with the directives from the Court Notice of Electronic Filing ("NEF"), which was generated as a result of electronic filing.

This 19th day of October, 2018.

                                                       By:   /S/ Katie S. Mitchell_____
                                                        Katie S. Mitchell
                                                        Georgia Bar No.  106088
                                                        /S/ Scott G. Reddock
                                                        Scott G. Reddock
                                                        Georgia Bar No.  476162

**MITCHELL & REDDOCK, LLC**
Attorneys for Plaintiff
111 West Court Street
Hinesville, Georgia  31313
Phone:  (912) 332-7077
Fax:  (912) 332-7179